HON. ASAHEL PECK,
HON. TIMOTHY P. REDFIELD, } ASSISTANT JUDGES.
HON. JONATHAN ROSS,

---

\* JAMES A. DAVIS *v.* TOWN OF LANDGROVE.

*Soldier's Bounty.*

Where a soldier, by re-enlisting and applying on the quota of a town, complied with all the terms and conditions of a vote of the town constituting a general offer of bounty to all applying on that quota and the town has the benefit of the service performed, he is entitled to recover, notwithstanding he did not enlist in reliance upon the offer.

THIS was an action to recover a soldier's bounty, and was referred to a referee, who reported as follows:

---

\*Decided February term, 1870.

It appeared that the plaintiff, on the 13th day of December, 1861, enlisted as a soldier in the United States service, for the town of Landgrove, and served as such until the 5th day of January, 1864, when, being then in the service, in the state of Louisiana, he (with two other soldiers who were in the same company), re-enlisted for three years, or until discharged, for Landgrove, and was finally discharged from the service, July 28, 1865. When he re-enlisted, the soldiers in his regiment were informed by the colonel that the towns in Vermont were moving in the matter of raising town bounties. Plaintiff was not influenced by this to re-enlist, but would have done so had he not been so informed.

On a furlough of thirty-five days, the plaintiff, in the spring of 1864, returned to Landgrove ; but during his stay there at this time said nothing to the selectmen of the town in regard to a town bounty. Afterwards, the plaintiff was taken sick and obtained another furlough, and returned to Landgrove again, in haying time of 1864, and remained there until some time in the October following. During this period, at some time, the plaintiff applied to —— Woodward, one of the selectmen of Landgrove, in relation to the town bounty, and was told that the quota of the town was full. The plaintiff then told Woodward he should go to the town of Weston, and be credited to that town. Plaintiff went to Weston, and on his return Woodward called on him, and told him if he would go for Landgrove he, Woodward, would guarantee to him as much as Weston. Plaintiff consented to let his credit remain. At a town meeting, held in Landgrove, December 1, 1863, $300 was voted as a bounty for soldiers, under the call of October 17, 1863, the quota of the town being three men, and under this call the selectmen of Landgrove did nothing to fill it, as the re-enlisted men above named, including the plaintiff, made up the quota. The other two selectmen neither authorized nor knew of Woodward's conversation with and guarantee to the plaintiff as above mentioned. At the annual March meeting of Landgrove, in 1866, it was voted to pay the re-enlisted soldiers $100 each, provided they will release all claims against the town. This sum was afterwards paid each of the two soldiers who re-enlisted at the same time with the plaintiff. It was offered by the selectmen to the plaintiff, but refused by him.

At the time the plaintiff talked with Woodward, above referred to, the town of Weston was offering a bounty of $500.

The vote of the town was as follows :

2d. Voted, to raise $300 as a bounty, or pay twenty dollars per month for each man while in service.

4th. Voted, to pay the men, if raised, the bounty of $300

each when mustered into service, or twenty dollars per month each during the term of .service. The selectmen are empowered to borrow money to pay this bounty.

The court, at the June term, 1870, Prout, J., presiding, decided plaintiff was entitled to recover $300, with interest from January 6th, 1864, to which decision the defendant excepted.

*A. L. Miner*, for the defendant.

*J. K. Batchelder*, for the plaintiff.

The opinion of the court was delivered by

Pierpoint, C. J.　The question involved in this case arises upon the report of a referee. It appears from the report that under the call for volunteers issued by the government on the 17th of October, 1863, the quota of the defendant town was three men. For the purpose of obtaining the men to fill said quota, the town, on the 1st day of December, 1863, voted a bounty of $300 to each volunteer when mustered into service. On the 5th day of January, 1864, the plaintiff, who was then in the service, re-enlisted, with two of his companions, for the term of three years, and all credited themselves to the defendant town, and all were applied upon and went to fill the quota of the town under said call. At the time of such re-enlistment the town had not obtained any one to enlist upon their quota, and as said re-enlisted men filled their quota they obtained none afterwards, but appropriated the credit of said re-enlisted men in discharge of their quota.

But it is insisted that the plaintiff is not entitled to recover, for the reason that at the time he re-enlisted he did not know of the said vote, and did not act with reference to it.

The vote of the town is general, not limited to any person or class of persons, but offers a bounty to any person who shall enlist and be credited to the town to fill that quota. This is the obvious import of the vote. The plaintiff strictly complied with the terms and conditions of the offer, and the town derived therefrom all the benefits and advantages contemplated by the offer. They accepted and appropriated the services of the plaintiff to the use for which they sought them. Why then is not the plaintiff enti-

tled to the offered bounty ?   This state offers a bounty of $20 to any person who shall kill a panther.   Suppose in one of my hunting excursions I encounter such an animal, and it becomes a question of life or death between us.   I must kill him or he will kill me.   I succeed in killing him, and claim the bounty.   Is it a good answer to that claim to say to me, You did not kill the panther relying on the bounty ; you did not at the time think of it. You killed the panther to save your own life.   It is true you have complied with all the conditions of the offer, and have rendered the state some service by destroying a dangerous animal, but you did not do it from the right motive.   You thought more of your life than your purse.   I think I should hardly accept that as a sufficient answer.   Or suppose a man loses his property, and offers a reward to any person who shall find it and return it.   When the finder returns the property and claims the reward, is it any answer to the claim, for the owner to say that when you found the property you did not know that I had offered a reward for its return ?   Must the finder show that he found and returned the property relying upon the offer ?   In *Williams* v. *Carwardine*, 24 E. C. Law, 271, it appeared that the defendant offered a reward for information that should lead to the conviction of the murderer of his brother.   The plaintiff, in anticipation of death, and to ease her conscience, gave such information.   The jury found that she was not induced thereto by the offer of the reward.   PARKE, J., held she was entitled to recover.   On a motion for a new trial, DENMAN, C. J., said : " The plaintiff, having given information which led to the conviction, has brought herself within the terms of the advertisement, and is entitled to recover."   LITTLEDALE, J. : " The advertisement amounts to a general promise to give a sum of money to any person who shall give information which might lead to the discovery of the offender."   PARKE, J. : " There was a contract with any person who performed the condition mentioned in the advertisement."   PATTERSON, J. : " I am of the same opinion.   We cannot go. into the plaintiff 's motives."

In this case, the plaintiff having strictly complied with all the terms and conditions of the offer, and the defendant having taken the full benefit of the service performed, we think he is entitled to

recover, notwithstanding he did not enlist relying upon the offer; and this is in accordance with the principle of all the cases upon the subject in this state.

Other questions presented by the report are not relied upon.

Judgment affirmed.